UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE

SCOTT E. GAMMONS,                    )
                                     )
            Plaintiff,               )
                                     )
v.                                   )        No.:   3:21-CV-173-TAV-DCP
                                     )
ADROIT MEDICAL SYSTEMS, INC.,        )
GRAZYNA H. GAMMONS,                  )
KELLEY PATTEN, and                   )
GENE GAMMONS,                        )
                                     )
            Defendants.              )

**<u>MEMORANDUM OPINION AND ORDER</u>**

Before the Court is defendants' motion to dismiss [Doc. 10]. Plaintiff filed a

response [Doc. 16], and defendants filed a reply [Doc. 18]. This motion is now ripe for

resolution.

The Court finds that plaintiff has plausibly pleaded the challenged claims against all

defendants, including defendant Kelley Patten. Therefore, defendants' motion to dismiss

[Doc. 10] is **DENIED**.

**I.     Background**

The Court accepts as true all factual allegations in the complaint. *Directv, Inc. v.*

*Treesh*, 487 F.3d 471, 476 (6th Cir. 2007) (citation omitted). Plaintiff and his father

defendant Gene Gammons ("Gene") founded defendant Adroit Medical Systems, Inc.

("Adroit") [Doc. 1 ¶ 13]. Plaintiff was a shareholder of Adroit, a member of its Board

of Directors, and one of its Vice Presidents until his termination on March 12, 2020

[*Id.* ¶¶ 14, 37]. Gene was Adroit's President; although, his health was declining [*Id.* ¶¶ 14–15]. Defendant Grazyna Gammons ("Grazyna") is Gene's wife and plaintiff's stepmother, and defendant Kelley Patten ("Patten") is Grazyna's daughter and plaintiff's stepsister [*Id.* ¶¶ 16–17]. At all relevant times, Grazyna served on Adroit's Board of Directors, and Patten served as its Vice President of Operations, where she controlled its accounting [*Id.*]. Both Grazyna and Patten had access to Adroit's bank accounts [*Id.* ¶ 18].

Around July 2019, plaintiff discovered several questionable Adroit actions relating to Grazyna and Patten [*Id.* ¶ 19]. For example, plaintiff noted numerous unusual expenses for travel, meals, entertainment, reimbursement, and other expenses, and he noticed that Grazyna and Patten caused Adroit to sell assets without accounting for the sales [*Id.* ¶¶ 20–33]. These actions led plaintiff to believe that Grazyna and Patten were involved in illegal activities [*Id.* ¶ 34]. Therefore, in 2019 and early 2020, plaintiff reported Grazyna and Patten's suspected illegal activities to federal and state authorities [*Id.* ¶¶ 35–36]. After reporting, plaintiff received notice that a special shareholders meeting was set for March 11, 2020, and at the meeting, Adroit would elect a new board of directors, name Grazyna President, and adopt new bylaws [*Id.* ¶ 37].

In response, on March 4, 2020, plaintiff filed a conservatorship petition to act on Gene's behalf as Adroit's President; the petition detailed the above facts [*Id.* ¶¶ 38–39]. On March 5, 2020, a court granted the petition and appointed plaintiff as Gene's emergency conservator [*Id.* ¶ 40]. Grazyna received notice of the conservatorship on March 7, 2020 [*Id.* ¶ 41]. Exercising Gene's authority, between March 5, 2020, and March 9, 2020,

plaintiff authorized a forensic audit of Adroit's accounting records, suspended-with-pay Grazyna and Patten, changed the locks on Adroit's buildings, and consented to an IRS search of Patten's office [*Id.* ¶¶ 40, 42–44].

On March 11, 2020, at the special shareholders meeting, Grazyna voted Gene's shares to elect herself Adroit's President and Chairmen of its Board of Directors [*Id.* ¶ 46]. On March 12, 2020, Grazyna and Gene executed a joint letter dismissing plaintiff from his positions at Adroit [*Id.* ¶¶ 47–48]. Plaintiff specifically alleges that both Grazyna and Patten were "employed by Adroit in supervisory and/or managerial positions, were directors of Adroit or were exercising such power and authority . . . when they terminated" plaintiff and removed him from the Board of Directors [*Id.* ¶ 49]. Plaintiff alleges defendants terminated him "immediately after" and because they learned of his whistleblowing [*Id.* ¶¶ 58–59, 65, 67]. Plaintiff further alleges his termination was "willful and malicious," "malevolent[]," "without justification," motivated "by the desire to curtail his ability to" report defendants' illegal activities, and "to punish and injure Plaintiff and to cover up" defendants' illegal activities, and plaintiff alleges his termination benefitted the individual defendants personally and harmed Adroit [*Id.* ¶¶ 70, 73–75, 80–81, 86]. While plaintiff questions Gene's role in his termination, he nevertheless alleges Gene is vicariously liable for Grazyna's actions because she was his attorney-in-fact [*Id.* ¶ 50].

Based on these facts, plaintiff asserts five claims: (1) violation of the Taxpayer First Act against all defendants; (2) violation of the Tennessee Public Protection Act ("TPPA") against Adroit; (3) intentional interference with at-will employment against Patten,

Grazyna, and Gene; (4) intentional interference with prospective economic advantage against Patten, Grazyna, and Gene; and (5) civil conspiracy against Patten, Grazyna, and Gene [*Id.* ¶¶ 54–86].

## II.    Defendants' Motion to Dismiss

Defendants move to dismiss under Federal Rule of Civil Procedure 12(b)(6) [Docs. 10, 11]. In deciding a Rule 12(b)(6) motion to dismiss, the Court must construe the complaint in the light most favorable to the plaintiff, accept all factual allegations as true, draw all reasonable inferences in favor of the plaintiff, and determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *Directv, Inc. v. Treesh*, 487 F.3d 471, 476 (6th Cir. 2007) (citation omitted). This assumption of factual veracity, however, does not extend to bare assertions of legal conclusions. *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). And the Court is not "bound to accept as true a legal conclusion couched as a factual allegation." *Papasan v. Allain*, 478 U.S. 265, 286 (1986). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. "Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679. The allegations must "possess enough heft to show that the pleader is entitled to relief." *Twombly*, 550 U.S. at 557.

4

The Court will evaluate defendants' motion pursuant to this standard.

## A. TPPA's Alleged Abrogation of Common Law Claims Against Individuals

Defendants move to dismiss plaintiff's common law claims in Counts III, IV, and V on grounds that the TPPA provides plaintiff's exclusive remedy [Doc. 11 pp. 3–6]. Relying exclusively on a footnote in the Tennessee Supreme Court's decision in *Williams v. City of Burns*, defendants argue that the 2014 amendment to the TPPA abrogated all common law causes of action against individuals based on a plaintiff's refusal to remain silent about illegal activities [*Id.* at 4 (citing 465 S.W.3d 96, 110 n.11 (Tenn. 2015))]. Here, defendants aver plaintiff alleges defendants' sole motivation for terminating plaintiff was that plaintiff reported defendants' alleged illegal activities; therefore, defendants assert plaintiff's sole claim must be under the TPPA [*Id.* at 4–6].

Plaintiff responds that the 2014 amendment to the TPPA did not abrogate his common law claims [Doc. 16 pp. 6–10]. Plaintiff avers that the amendment only abrogated common law retaliatory discharge claims [*Id.* at 6–8]. Plaintiff highlights differences between TPPA and intentional interference claims and emphasizes that TPPA claims are against employers whereas intentional interference claims are against third parties [*Id.* at 8–9]. Therefore, plaintiff argues TPPA claims are distinct from intentional interference claims and consequently that the TPPA does not abrogate his common law claims [*Id.* at 9–10].

5

Defendants reply that the TPPA provides plaintiff's exclusive remedy because plaintiff's common law claims derive from the same facts as his TPPA claim, namely, reporting illegal activities [Doc. 18 p. 3]. Defendants further argue that the 2014 amendment's abrogation is broader than plaintiff suggests [*Id.* at 3–4]. Defendants reason that the Tennessee General Assembly could have drafted the amendment to allow claims against individuals and that the fact that the Tennessee General Assembly did not do so suggests it intended to abrogate claims against individuals [*Id.*].

The Tennessee General Assembly "unquestionably has the constitutional and legislative authority" to abrogate Tennessee common law claims, but "it must make clear its intention to do so." *State v. Howard*, 504 S.W.3d 260, 270 (Tenn. 2016) (citation omitted). And when the Tennessee General Assembly abrogates common law claims, the claims are "altered . . . [no] further than the statute declares or necessarily requires." *Shore v. Maple Lane Farms, LLC*, 411 S.W.3d 405, 423 (Tenn. 2013) (citation omitted).

In 2014, Tennessee amended the TPPA to "abrogate[] and supersede[] the common law with respect to any claim that could have been brought under [that] section." T.C.A. § 50-1-304(g) (2021); *see Williams*, 465 S.W.3d at 110 n.11. As defendants note, *Williams* provides, "under the statute as amended, *in cases in which the plaintiff alleges retaliatory discharge* for refusing to participate in illegal activities or for refusing to remain silent about illegal activities, the TPPA is the exclusive basis for relief." *Williams*, 465 S.W.3d at 110 n.11 (emphasis added).

6

The Court finds that the amendment does not abrogate plaintiff's common law claims. As noted, defendants argue the above language from *Williams* suggests that the 2014 amendment abrogated *all* common law claims arising from reporting illegal activities against individual defendants [Doc. 11 pp. 3–6]. The Court disagrees for three reasons.

First, every case citing *Williams* that discusses the 2014 amendment is in the common law retaliatory discharge context and specifically states the amendment abrogates the common law retaliatory discharge claim; these cases do not suggest the amendment abrogated other claims. *See, e.g.*, *Hood v. City of Memphis Pub. Works Div.*, No. 2:17-CV-2869-SHM, 2021 WL 918766, at *8 (W.D. Tenn. Mar. 10, 2021); *Harris-Anderson v. Quince Nursing & Rehab. Ctr., LLC*, No. 2:19-CV-2032, 2020 WL 4506803, at *6 (W.D. Tenn. Aug. 5, 2020) ("[T]he 2014 amendments . . . expressly abrogated common law *retaliatory discharge claims* . . . ." (emphasis added)); *Knisley v. CEC Ent. Inc.*, No. 3:19-CV-495, 2019 WL 10949409, at *3 n.4 (M.D. Tenn. Oct. 23, 2019). And defendants cite no cases that apply the abrogation more broadly.

Second, the Court finds that a narrower construction of the abrogation is more consistent with *Williams* and the abrogation statute's language. Pertinently, *Williams* stated that "the TPPA is the exclusive basis for relief" "in cases in which the plaintiff *alleges retaliatory discharge* for [reporting illegal activities]." 465 S.W.3d at 110 n.11. This language suggests the *Williams* court interpreted the abrogation statute to abrogate *only* retaliatory discharge claims because the language refers specifically to retaliatory discharge. This is especially true considering the Court is not aware of any case applying

7

abrogation more broadly as just discussed.  Furthermore, the Court notes as plaintiff argues that intentional interference (and conspiracy) claims are different in kind than TPPA claims because intentional interference claims require plaintiffs to satisfy different elements and are against third parties rather than employers [*See* Doc. 16 pp. 8–9].

Finally, the abrogation statute is not sufficiently clear to establish the legislature's intent to apply a blanket abrogation of all common law claims.  *See Howard*, 504 S.W.3d at 270; *see also Shore*, 411 S.W.3d at 423 (citation omitted) (noting that abrogation only extends as far as the statute "declares or necessarily requires.").  Defendants suggest that the 2014 amendment's language should be construed broadly [Doc. 18 p. 4], but the statute does not "necessarily require[]" abrogation of other common law claims, especially considering the statute's scope is limited to retaliatory discharge.[1]  *See* T.C.A. § 50-1-304 (titled "Retaliatory Discharge").

For these reasons, the Court finds that the 2014 amendment to the TPPA did not abrogate common law intentional interference and conspiracy claims against individuals based on the same facts as a TPPA claim.  Therefore, plaintiff may maintain intentional interference and conspiracy claims even though they derive from the same facts as his TPPA claim.  Accordingly, defendants' motion to dismiss plaintiff's claims in Counts III, IV, and V on abrogation grounds is **DENIED**.

---

[1]  Defendants' argument regarding the differences between TPPA and common law retaliatory discharge claims does not change the outcome considering courts have not actually applied the abrogation broadly and that *Williams*'s language refers specifically to "retaliatory discharge" [*See* Doc. 18 p. 3].  *See* 465 S.W.3d at 110 n.11.

### B. Claims Against Corporate Agents[2]

Defendants move to dismiss Counts III, IV, and V, alleging defendants are immune from liability because they acted in their corporate capacity when they terminated plaintiff.

At the outset, the Court notes that defendants argue plaintiff's claims in Counts III, IV, and V must fail because those counts assert derivative claims yet plaintiff has not satisfied statutory requirements for bringing derivative claims [Doc. 11 pp. 9–11]. What is more, defendants request attorneys' fees under Tennessee Code Annotated § 48-17-401, which permits courts to award attorneys' fees when a plaintiff brings a derivative claim "without reasonable cause or for an improper purpose" [*Id.* at 12–13 (citing T.C.A. § 48-17-401(d)(2) (2008))].

However, plaintiff responds that his claims are individual, direct common law claims against defendants (rather than statutory derivative claims) and therefore that defendants' argument and request for attorneys' fees must fail [Doc. 16 pp. 13–14]. Defendants' reply does not address plaintiff's response that his claims are not derivative or make alternative argument with respect to attorneys' fees.

To determine whether a claim is direct or derivative, courts must consider "the nature of the wrong and to whom the relief should go." *Keller v. Estate of McRedmond*, 495 S.W.3d 852, 876 (Tenn. 2016) (quoting *Tooley v. Donaldson, Lufkin, & Jenrette, Inc.*, 845 A.2d 1031, 1039 (Del. 2004)). Specifically, courts must consider "who suffered the

---

[2] Because the Court finds that plaintiff has plausibly pleaded claims against Patten in Part II.C, the term "defendants" in this Section includes all of the individual defendants.

alleged harm . . . and . . . who would receive the benefit of any recovery or other remedy[.]" *Id.* at 880 (quoting *Tooley*, 845 A.2d at 1035).

The Court finds plaintiff has not asserted derivative claims. Most importantly, the complaint does not indicate plaintiff intended his claims to be derivative [*See generally* Doc. 1]. Moreover, plaintiff alleged personal harms from his termination, and he seeks personal relief to which he—not Adroit—is entitled [*See id.* ¶ 86; *see also id.* ¶¶ 60, 68–69 (requesting reinstatement, back pay, lost benefits, and other personal damages); *id.* p. 18 (prayer for personal relief)]. It is true that plaintiff alleges defendants' actions harmed Adroit, but as discussed below, these allegations are necessary to establish plaintiff's other claims, and plaintiff does not plead any action or request any relief on Adroit's behalf.

In light of the foregoing and the lack further argument on the issue in defendants' reply, the Court finds plaintiff's claims are not derivative. Therefore, defendants' argument that plaintiff has not satisfied statutory requirements for bringing a derivative claim is irrelevant, and defendants' request for attorneys' fees is **DENIED**.

### 1. Intentional Interference (Counts III and IV)

Defendants move to dismiss Counts III and IV, reasoning that defendants are immune from liability because when they terminated plaintiff, they acted in their corporate capacity as the outgoing and newly-elected Presidents [Doc. 11 pp. 6–7].

Plaintiff responds that corporate agents may be individually liable when their actions are "outside the scope of [their] authority, . . . with malice, or . . . to serve [their] own interests" [Doc. 16 p. 11 (citation omitted)]. Plaintiff cites the complaint where

10

plaintiff alleges defendants terminated plaintiff with malice and to hide their alleged wrongdoing for their personal benefit [*Id.* (citing Doc. 1 ¶¶ 73–75, 80–81)].

Defendants reply by highlighting public policy supporting corporate agent immunity from liability, which is to encourage open discussion during official action [Doc. 18 pp. 5–6]. Defendants note even inaccurate statements and suboptimal decisions do not support corporate agent liability [*Id.* at 6–7]. Defendants argue that plaintiff has not alleged a plausible claim for interference because he only alleged defendants acted at an official board meeting and that he was terminated the next day; he does not allege they made improper statements during the board meeting [*Id.* at 7–8].

At-will employees generally have no right to continued employment, but "intentional interference with at-will employment by a third party . . . is actionable." *Forrester v. Stockstill*, 869 S.W.2d 328, 330 (Tenn. 1994). "The essential elements of a claim for intentional interference with employment are 'that the defendant intentionally and without justification procured the discharge of the employee in question.'" *Lyne v. Price*, No. W2000-00870-COA-R3-CV, 2002 WL 1417177, at *2 (Tenn. Ct. App. June 27, 2002) (quoting *Ladd v. Roane Hosiery, Inc.*, 556 S.W.2d 758, 760 (Tenn. 1977)).

Generally, "a corporate director, officer, or employee is not liable for tortiously interfering with a corporate contract, because he [is an agent of the corporation and as such] is considered a party to the contract . . . ." *Forrester*, 869 S.W.2d at 333 (citation omitted). But this immunization from liability attaches only if the officer, director, or employee is

11

acting "within the general range of his authority, . . . motivated by an intent *to further the interest of the corporation*." *Id.* at 334–35 (emphasis added).

The agent is not immune from liability, however, if the agent acts as a third party to the employment relationship in that the agent acts "outside the scope of his authority, . . . *with malice, or . . . to serve his own interests*." *Id.* at 333 (emphasis added) (citation omitted). In making this determination, courts must consider whether the facts show "the defendant[] would benefit personally from [the] plaintiff's discharge." *Thompson v. Memphis Light, Gas & Water*, 416 S.W.3d 402, 415 (Tenn. Ct. App. 2011) (alteration in original) (citation omitted). "The critical factors" the court must consider "are intent, motive or purpose, and means." *Forrester*, 869 S.W.2d at 333.

The Court finds plaintiff has stated a plausible claim for relief as to Counts III and IV. The complaint details that plaintiff reported defendants' alleged illegal activities [Doc. 1 ¶¶ 19–36]. Moreover, the complaint alleges defendants became aware of plaintiff's whistleblowing [*Id.* ¶¶ 38–45, 58, 65, 73–75, 79–81] and that defendants terminated plaintiff from his positions "immediately after[wards]" [*Id.* ¶¶ 46–48, 58, 65]. Plaintiff further alleges defendants were "motivated" to terminate plaintiff "by the desire to curtail his ability to" report defendants' alleged illegal activities and to "punish and injure" plaintiff [*Id.* ¶ 74–75]. And plaintiff alleges these actions personally benefitted defendants despite that they were not in Adroit's best interests [*Id.* ¶¶ 73–75, 79–81].

12

Taken together, these facts allege defendants terminated plaintiff with the improper intent and motive of retaliating against plaintiff. Moreover, these facts allege that "defendant[s] benefit[ed] personally from plaintiff's discharge" because the termination prevented plaintiff from discovering and reporting further evidence of defendants' alleged illegal activities. *See Thompson*, 416 S.W.3d at 414; *see also Lyne*, 2002 WL 1417177, at *2–4 (denying a motion to dismiss where the plaintiff alleged the defendant advanced his own interests rather than his organization's interests when he terminated the plaintiff for whistleblowing). Thus, here, plaintiff specifically alleges defendants did not act in Adroit's interests and were instead "acting with malice" and "to serve [their] own interests." *Forrester*, 869 S.W.2d at 333.

Defendants rely on *Forrester* in arguing that defendants acted in their official capacity and therefore are immune from liability [Doc. 11 pp. 5–6]. In *Forrester*, the plaintiff was terminated from his position as executive director of a corporation after the defendants—who were members of the corporation's board of directors—allegedly made false and misleading statements during board meetings about the plaintiff's performance. 869 S.W.2d at 332–34. The Tennessee Supreme Court found that the plaintiff had no interference claim because: (1) the defendants' statements were appropriate because, as directors, they needed to report their opinions regarding the plaintiff's employment; and (2) the defendants had no improper malice against the plaintiff and there was no evidence that they would benefit personally from his termination. *Id.* at 334–35. From there, the

13

court noted policy supports immunity for officers who make statements that are derogatory but are in good faith and in the best interests of the corporation. *Id.* at 335.

The Court finds *Forrester* is distinguishable from this case. First, the plaintiff's claim in *Forrester* focused on derogatory statements during board meetings. Here, though, plaintiff alleges defendants fired him within a few days after and because of his whistleblowing; plaintiff's claims are not based on any alleged derogatory statements of defendants. Second, in *Forrester*, the court found the defendants made their statements without malice and not for personal interests. Here, though, plaintiff alleges defendants' actions were "motivated" to "punish and injure" plaintiff and were in their own personal interests because they prevented plaintiff from disclosing further evidence of defendants' illegal activities [Doc. 1 ¶¶ 75, 81].

Consequently, defendants' motion to dismiss Counts III and IV on grounds that defendants are immune from liability is **DENIED**.

### 2.     Conspiracy (Count V)

Defendants move to dismiss Count V, which alleges defendants conspired to terminate plaintiff [Doc. 11 p. 8]. Defendants first argue the intracorporate conspiracy immunity doctrine bars plaintiff's claim because defendants acted in their official capacity when they fired plaintiff [*Id.*]. Second, defendants argue plaintiff's claim must fail because the underlying claims on which the conspiracy claim is based should be dismissed [*Id.*; Doc. 18 p. 8]. Plaintiff responds that the intracorporate conspiracy immunity doctrine

Case 3:21-cv-00173-TAV-DCP   Document 19   Filed 10/26/21   Page 14 of 19   PageID #: 138

does not apply because defendants were not acting in their official capacity when they terminated plaintiff [Doc. 16 pp. 12–13].

"An actionable civil conspiracy is a combination of two or more persons who, each having the intent and knowledge of the other's intent, accomplish by concert an unlawful purpose, or accomplish a lawful purpose by unlawful means, which results in damage to the plaintiff." *Trau-Med of Am., Inc. v. Allstate Ins. Co.*, 71 S.W.3d 691, 703 (Tenn. 2002). The intracorporate conspiracy immunity doctrine recognizes that actions of corporate officials on behalf of their corporation are truly actions of the corporation, a single entity. *Id.* at 703–04. Therefore, because a conspiracy requires multiple actors, actions of multiple corporate agents in their corporate capacity "do[] not satisfy the plurality requirement necessary to establish an actionable conspiracy claim." *Id.* at 703. However, the doctrine only applies when corporate officials act "within the scope of [their] employment." *Id.* at 704 (citation omitted).

The precise meaning of "within the scope of [] employment" in this context is underdeveloped. The Middle District of Tennessee has noted there is no per se rule regarding when corporate officials act within the scope of their employment. *Constr. Mgmt. v. Expo Hosp., LLC*, 3:19-CV-298, 2020 WL 489461, at *6 (M.D. Tenn. Jan. 30, 2020). Instead, according to the Middle District of Tennessee, courts should consider the factors that courts consider in *respondeat superior* cases, such as "the time, place and *purpose* of the act . . . ." *See id.* at *6–7 (emphasis added) (quoting *Hughes v. Metro. Gov't*

15

*of Nashville & Davidson Cnty.*, 340 S.W.3d 352, 366 (Tenn. 2011)) (finding that the defendants did not act in their personal interests).

Other courts suggest the doctrine does not apply when corporate agents act for "their own personal purposes and not those of the corporation." *Trau-Med of Am.*, 71 S.W.3d at 704.[3] Whether following the Middle District of Tennessee or other courts, whether an employee has acted within the scope of his employment is generally a factual question and should not be addressed at the motion-to-dismiss stage. *Orlowski v. Bates*, 146 F. Supp. 3d 908, 930 (W.D. Tenn. 2015); *PI, Inc. v. Beene*, No. 1:12-CV-350, 2014 WL 11455975, at *10 (E.D. Tenn. Aug. 18, 2014) ("Whether specific actions . . . fall outside the [defendants'] scope of employment . . . are questions of fact that are inappropriate for resolution on a motion to dismiss.").

Without adopting any particular test for determining whether a corporate official's act is "within the scope of employment," the Court finds that plaintiff has stated a plausible claim for relief as to Count V. For the sake of brevity, the Court will not readdress this

---

[3] The Tennessee Supreme Court in *Trau-Med* stated, "for a claim of intracorporate conspiracy to be actionable, the complaint must allege that corporate officials, employees, or other agents acted *outside the scope* of their employment *and* engaged in conspiratorial conduct *to further their own personal purposes* and not those of the corporation." *Trau-Med of Am.*, 71 S.W.3d at 704 (emphasis added). The *Trau-Med* court used the conjunctive "and," which suggests, for liability to be appropriate, the act needs to be *both* outside the scope of employment *and* not for personal purposes. But courts interpreting the doctrine have repeatedly suggested acts purely for personal reasons are alone sufficient, even where the acts are ordinary corporate acts, such as terminating an employee. *See, e.g., PI, Inc. v. Beene*, No. 1:12-CV-350, 2014 WL 11455975, at *10 (E.D. Tenn. Aug. 18, 2014) (denying a motion to dismiss when finding that the plaintiffs arguably acted "outside the scope of their employment [when they] entered . . . transactions with no legitimate business purpose and *solely for the*[*ir*] individual benefit . . . ."); *Brown v. Bd. of Educ.*, 47 F. Supp. 3d 665, 706–07 (W.D. Tenn. 2014).

16

issue entirely. The Court incorporates its reasoning in Part II.B.1, which explains that plaintiff has sufficiently alleged that defendants' actions were: (1) based on malice towards plaintiff; (2) not in Adroit's best interests, and, most importantly; (3) for defendants' personal benefit by preventing plaintiff from discovering and reporting additional evidence of their alleged illegal activities. Based on these conclusions, plaintiff has plausibly alleged defendants' actions were for their personal benefit and not within the scope of their employment and therefore that the intracorporate conspiracy immunity doctrine does not apply.

Additionally, the Court summarily rejects defendants' argument that plaintiff's conspiracy claim must fail because the underlying claims on which the conspiracy claim is based should be dismissed [*See* Doc. 11 p. 8; Doc. 18 p. 8 (quoting *Forrester v. Stockstill*, 869 S.W.2d 328, 330 (Tenn. 1994))]. Defendants' argument is conditioned on its arguments as to Counts III and IV, which the Court has already rejected. Because the Court will not dismiss the underlying claims, defendants' argument as to conspiracy must fail.

Therefore, defendants' motion to dismiss Count V is **DENIED**.

### C. Claims Against Patten

Defendants move to dismiss all claims against Patten, reasoning plaintiff has not alleged Patten was involved in plaintiff's termination [Doc. 11 pp. 2–3]. Defendants explain that plaintiff does not allege Patten personally supervised plaintiff and only alleges she was a member of Adroit's Board of Directors [*Id.* at 3]. Defendants argue this

17

Case 3:21-cv-00173-TAV-DCP   Document 19   Filed 10/26/21   Page 17 of 19   PageID #: 141

allegation alone is insufficient because a board member is not liable for acts taken for the corporation [*Id.*].

Plaintiff responds that the complaint alleges the following: (1) Patten was Adroit's Vice President of Operations and had control over Adroit's accounting; (2) plaintiff discovered evidence suggesting Patten committed crimes; (3) plaintiff reported Patten's suspected illegal activities to authorities, and Patten became aware of plaintiff's whistleblowing;[4] and (4) defendants terminated plaintiff after Patten attended a board meeting the day before the meeting [Doc. 16 pp. 3–6]. Thus, plaintiff argues the complaint alleges Patten suggested that Adroit terminate plaintiff and/or voted to terminate plaintiff. Defendants reply that plaintiff has not alleged Patten terminated plaintiff and that the "only relevant allegation is that Ms. Patten 'attended' a board meeting" [Doc. 18 pp. 1–2].

The Court finds that the complaint plausibly alleges claims against Ms. Patten. Plaintiff alleges Patten was Adroit's Vice President and was in control of Adroit's accounting and bank accounts [Doc. 1 ¶¶ 17–18]. Plaintiff further alleges that plaintiff discovered suspicious expense reports and actions relating to Patten, including improper expenses and sale of company assets without proper accounting [*Id.* ¶¶ 19, 24–32]. Moreover, plaintiff avers that based on these expenses, he believed Patten was engaging in

---

[4] There are several facts alleged that would indicate Patten had notice of plaintiff's whistleblowing. Plaintiff alleges he changed the locks, informed Patten that defendants' alleged illegal activities "had been reported to law enforcement agencies," and suspended Patten with pay. Moreover, he alleges that Grayzna personally received notice of his conservatorship petition, which detailed the alleged scheme and plaintiff's whistleblowing, and plaintiff notes that Patten is Graznya's daughter [*Id.* ¶¶ 17, 40–43]. Finally, plaintiff alleges that the termination occurred "immediately after" and because the individual defendants learned of his whistleblowing [*Id.* ¶¶ 58–59].

18

unlawful activity, and he reported her activity to state and federal authorities [*Id.* ¶¶ 34–36]. Plaintiff alleges Patten knew of plaintiff's whistleblowing [*Id.* ¶¶ 38–44]. *See supra* note 4. And, despite defendants' contention that plaintiff does not allege that "Ms. Patten effectuated his termination" [Doc. 18 p. 2], plaintiff specifically alleges that "Ms. Patten [was] employed by Adroit in [a] supervisory and/or managerial position[ and] was [a] director[] of Adroit or [was] exercising such power through other . . . means" and that she "terminated Plaintiff's employment with Adroit" [Doc. 1 ¶ 49; *see also id.* ¶ 67 ("The sole cause motivating . . . Ms. Patten to terminate Plaintiff[] was his [whistleblowing].")]. Taken together, these allegations support claims against Patten.[5] *See also* Part II.B.1. (noting plaintiff alleged that the individual defendants, including Patten, terminated plaintiff with malice and to impede his whistleblowing).

Thus, defendants' motion to dismiss plaintiff's claims against Patten is **DENIED**.

### III. Conclusion

For the foregoing reasons, defendants' motion to dismiss [Doc. 10] is **DENIED**. All counts will remain pending against all defendants.

IT IS SO ORDERED.

s/ Thomas A. Varlan
UNITED STATES DISTRICT JUDGE

---

[5] Defendants argue plaintiff has not alleged any claim against Patten as a matter of law because the only allegations against her relate to actions on behalf of Adroit [Doc. 11 pp. 3, 7–8]. The Court rejects this argument because the Court has already found in Part II.B that plaintiff sufficiently alleged that defendants' actions were not on behalf of Adroit.

19