UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| | |
|---|---|
| SCOTT E. GAMMONS, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) No. 3:21-CV-173-TAV-DCP |
| | ) |
| ADROIT MEDICAL SYSTEMS, INC., *et al.*, | ) |
| | ) |
| Defendants. | ) |

## **ORDER**

This case is before the undersigned pursuant to 28 U.S.C. § 636, the Rules of this Court, and Standing Order 13-02.

This matter is before the Court on the parties' Joint Status Report [Doc. 65] and their position statements [Docs. 66, 67, and 68]. After considering the parties' position statements, the Court will allow Plaintiff to conduct a limited forensic examination of Defendants Grazyna Gammons's ("Ms. Gammons") and Kelley Patten's ("Patten") cellular phones as further explained below. The Court declines to order Plaintiff to pay for the costs of the first and second forensic examinations.

I.  **BACKGROUND**

At the heart of the parties' dispute is a forensic examination that the Court ordered in November 2022 [Doc. 53]. By way of background, on September 26, 2022, Plaintiff filed a motion to compel a forensic examination primarily relating to his first request for production of documents ("First Set of RFPs"), seeking Ms. Gammons's and Patten's e-mail and text message communications sent or received from any individual Defendant in which Plaintiff is discussed or referenced (RFP. No. 4), e-mail and text message communications from any member of Adroit

Medical Systems Inc.'s ("Adroit") board of directors in which Plaintiff is discussed or referenced (RFP No. 5), and all communications in any written or electronic form sent to or received from any individual Defendant or member of Adroit's board of directors (RFP No. 6) [Doc. 37 p. 3]. Plaintiff served similar discovery requests on Adroit (RFP Nos. 18–19, and 36) [*Id*. at 3–4].

In support of his request, Plaintiff argued that during Ms. Gammons's, Patten's, and Ed Tymitz's depositions, they referred to text messages that had not been produced [*Id*. at 4–7]. Plaintiff sought "an order compelling discovery of all responsive communications," and "an order allowing his counsel to have an independent forensic examination of Ms. Gammons's and Patten's cellular telephones" [*Id*. at 7].[1] In light of the deposition testimony, the Court granted Plaintiff's request for a forensic examination of Ms. Gammons's and Patten's cell phones [Doc. 51 p. 6]. The Court limited the forensic "examination to the time period of March 1, 2020, to March 19, 2020, which is a week before and one week after the text messages were sent/received" [*Id*. at 6 (citation omitted")]. The Court declined to order Defendants to produce any communications in light of the forensic examination [*Id*. at 7].

Following the Court's Memorandum and Order [Doc. 51], the parties filed several motions relating to the forensic examination, which are detailed in the Court's Order [Doc. 64] dated December 14, 2022. In summary, Defendants completed the forensic examination without input from Plaintiff. Given that Plaintiff was not part of the process, he questioned the trustworthiness of the forensic examination. The Court ordered the parties to meet and confer to determine (1) why Defendants chose the forensic examiner, (2) the forensic examiner's qualifications and

---

[1] Plaintiff also stated that the Court's order should "extend to searches for electronic communications by Ms. Gammons and Ms. Patten to others in the same time period which are subject to Plaintiff's Request for Production of Documents[,] which he issued the same day he filed his motion [Doc. 36 p. 2]. Unlike the other discovery requests, Plaintiff did not attach these to his motion.

2

Case 3:21-cv-00173-TAV-DCP   Document 77   Filed 01/31/23   Page 2 of 14   PageID #: 1280

reputation, and the specifics on how the forensic examiner conducted the search, and (4) who should bear the costs in light of Plaintiff's previous agreement to pay for the forensic examination versus Defendants' unilateral agreement with the forensic examiner. The Court ordered the parties to file a joint status report on or before December 30, 2022.

In their Joint Status Report, the parties explain that they were not able to reach resolutions as to (1) Defendants' selection of the vendor and their reasons for selecting this vendor, (2) Plaintiff's satisfaction with the vendor's qualifications, (3) whether additional search criteria are warranted, and (4) whether Plaintiff should pay all or any of the costs of the forensic examination. Thereafter, the parties filed position statements [Docs. 66–68].

## II. POSITIONS OF THE PARTIES

Defendants' position statement explains that given the short window to complete the forensic examination, defense counsel "immediately began searching for a vendor to use" [Doc. 66 p. 3]. Defense counsel contacted his typical investigator, but the investigator could not perform the work. Many of Defendants' former vendors based in Knoxville have now merged with national companies, so defense counsel had to find a new vendor. Defense counsel's firm searched local vendors, but when called, the number was re-routed to another location out of the area. The law firm identified two vendors in Nashville: United States Forensics, LLC and 4Discovery, LLC ("4Discovery"). United States Forensic, LLC quoted an estimate of $6,000, while 4Discovery quoted an estimate of $3,750.00. The law firm requested a written contract with 4Discovery, and shortly thereafter, 4Discovery shipped a remote collection kit.

Defendants state that on November 18, 2022, Plaintiff's counsel contacted defense counsel stating that he had contacted a vendor, Lattimore Black Morgan and Cain, P.C. ("LBMC") to

perform the forensic examination [Doc. 66-1].[2]  Defense counsel responded that he had already arranged for the forensic examination and decided on the most cost-effective vendor [Doc. 66-1 p. 1].  The forensic examination was complete on November 30, 2022 [Doc. 66-2 p. 1]

Defendants assert that the Advisory Committee Notes to Rule 26 provide guidance on the parties' obligations.  For instance, Defendants state that according to the notes, the responding party should perform the search and produce the results while the requesting party is limited to helping to define the appropriate search terms [Doc. 66 p. 5 (citation omitted)].  Defendants state, "Counsel for the responding party must serve as a gatekeeper between the search company and the requesting party for purposes of relevance and privilege" [*Id*. at 6].

Defendants state that 4Discovery could not recover the text messages that originated this dispute.  Defendants explain that they never existed, which is consistent with Ms. Gammons's explanation that she was mistaken in how she communicated, or they were deleted and cannot be recovered.  Defendants state that the forensic examination resulted in the discovery of three text messages, one of which had been produced and the other two were irrelevant and inconsequential [Doc. 66-2 p. 2].[3]

According to Defendants, during the parties' meet and confer, they provided Plaintiff with additional references for 4Discovery, including references from law firms, the owner's CV, and a list of news articles relating to 4Discovery's prior work.[4]  Defendants state that the parties also generally discussed search terms and following their meet and confer, "Plaintiff sent proposed

---

[2]    Plaintiff's counsel noted in the e-mail, "You and I need to discuss search parameters and provide those ASAP to meet the very tight time frame" [Doc. 66-1 p. 1].

[3]    Defendants attached the Extraction Report from 4Discovery to their position statement [Doc. 66-2 pp. 7–14].

[4]    On January 12, 2023, Defendants filed a Supplement [Doc. 68], which includes the reference materials for 4Discovery that they provided to Plaintiff's counsel.

4

search terms that are far broader than the discovery requests at issue" [Doc. 66 p. 8]. Defendants, however, "agreed to broaden the search slightly as follows: 'an additional search on both phones for any text messages that references Scott Gammons (or some variation e.g., 'Scott') to or from anyone whatsoever, and then we will review to determine if the number belongs to an Adroit employee'" [*Id*.]. Although Plaintiff objected to another search until the Court resolved the parties' issues, Defendants proceeded with another forensic examination based on the agreement to slightly broaden the scope. Defendants provide the following:

> After searching both Mrs. Patten's phone and Mrs. Gammons's phone, a total of nine messages referencing the Plaintiff were found on Mrs. Patten's phone. None of these messages were to or from any other Adroit Employee. Two of the messages were to Ray Pinkstaff, Adroit's attorney and, therefore, privileged. Two of the messages were in a text chain to Randi Collie. Those messages were previously produced to the Plaintiff in discovery as Bates Numbers Patten_000024-29. The remaining five messages were to Mrs. Patten's husband, Clay Patten. Two of those messages were in a text chain previously produced to the Plaintiff as Bates Number Patten_000006. All five of the messages were identified by 4Discovery's first search and the text chains produced to the Plaintiff on November 30, 2020, as Exhibits C, D, and E. The Defendants communicated these results to the Plaintiff, provided a privilege log for the two messages to Ray Pinkstaff, and provided the underlying text chains from 4Discovery for the other seven messages. The Defendants attach that e-mail and all attachments here as **Exhibit 4**. This second search confirms – there are no responsive messages that have not been produced.

[*Id*.].

Defendants state that Plaintiff had an opportunity to provide search terms in accordance with the parties' discovery plan and that he did not do so.[5] Defendants state that the first time

---

[5] Specifically, Defendants cite to the parties' Rule 26(f) report, wherein the parties agreed that they would "first employ requests for production of documents without requiring computer word searches designated in the request" [Doc. 21 p. 2]. The parties further agreed, however, that "[t]o the extent any party thereafter determines a word search of another party's computer/computer system is necessary, before issuing a request for production, counsel for that party must first provide written notice of the word search request(s) to counsel of the party to

5

Plaintiff provided his alternative search terms was after the parties' meet and confer. In any event, Defendants state that they performed a second forensic examination "based on some of the proposed search criteria[,]" but the search did not reveal responsive messages [*Id*. at 10]. Defendants state that all six RFPs ask for production where "Plaintiff is discussed or referenced" or "any criticism of Plaintiff" [*Id*. at 11]. Plaintiff seeks to add thirteen (13) additional search terms, which Defendants claim are unwarranted by Plaintiff's discovery requests and unjustified by the deposition testimony. Defendants emphasize that Plaintiff moved to compel to find two text messages, and 4Discovery confirmed that they did not exist or cannot be recovered.

Defendants add that Plaintiff has also demanded another search based on his second set of RFPs ("Second Set of RFPs"). Defendants state that on September 26, 2022, Plaintiff served Ms. Gammons and Patten with the Second Set of RFPs, and they responded on November 4, 2022. Defendants assert that Plaintiff has never complained of their responses to these discovery requests, but now, he demands further forensic searches based on those responses and twenty-five (25) additional search terms.

Finally, Defendants state that Plaintiff has refused to pay any portion of the forensic search, despite his earlier promise to do so. Defendants request that Plaintiff be ordered to pay the expenses in full and that no further searches be ordered.

B.    **Plaintiff's Position Statement**

Plaintiff states that there are two fundamental issues: (1) he was not included in the contractor selection process or any discussion regarding the search criteria and that "the party solely engaged in selection and search definition was found to be deficient in their discovery

---

whom the request will be directed and make reasonable effort to meet and confer regarding the scope of such request to discuss possible limitations on the request and responsive information" [*Id*.].

production in an order compelling discovery," and (2) the search criteria is deficient [Doc. 67 p. 2 (emphasis omitted)]. With respect to Defendants' selection of 4Discovery, Plaintiff is not satisfied with the reasons why Defendants chose this particular vendor. Plaintiff states that the "fact that Sword & Shield may no longer be local is of no consequence given that Defendants proceeded with 4Discovery[,] which is also not local" [*Id*. at 3]. Plaintiff disagrees that Defendants had a conflict with his chosen vendor, LMBC, simply because defense counsel is adverse to LMBC in another case.[6] Plaintiff states that Defendants provided a list of firms that use 4Discovery but did not provide any contact names. Plaintiff's counsel identified two firms on the list with lawyers he knows, but "[u]pon contacting them, Plaintiff's counsel learned neither had personally worked with 4Discovery and could offer no opinion" [*Id*. at 4].

With respect to the search criteria, Plaintiff represents that the discovery subject to his motion to compel includes his First Set of RFPs to Ms. Gammons, Patten, and Adroit and his Second Set of RFPs to Ms. Gammons and Patten. Plaintiff asserts that the Court granted Plaintiff's request for a forensic examination without any limitation other than with respect to the temporal scope. Plaintiff states that Defendants acknowledge that their first forensic examination was deficient because they "agreed to conduct a second forensic examination for any messages sent or received by Defendants Grazyna Gammons or Kelley Patten referencing the Plaintiff" [*Id*. at 7 (citation omitted)]. Plaintiff states that there was no agreement to conduct this second search. Plaintiff argues that the search criteria was also deficient because (1) it failed to include electronic communications from Gene Gammons–a Defendant and a member of Adroit's board of directors, (2) the search was limited to text messages and did not include e-mail communications, and (3)

---

[6] In an e-mail dated November 30, 2022, defense counsel stated that the parties could not have proceeded with LBMC because "we are currently adverse to them in another ongoing matter" [Doc. 66-2 p. 1].

7

the directive to search for electronic communications that reference "Scott Gammons" or some variation thereof is deficient to the extent communications regarding Plaintiff could have occurred without specifically naming him. Plaintiff explains why he chose the specific terms to search [*Id*. at 8–9].

Plaintiff also proposes search criteria for his Second Set of RFPs, stating that "Defendants never took specific issue with Plaintiff's request to extend the forensic analysis to electronic communications sought in the second requests for production" [*Id.* at 10 (citing Doc. 39)]. Plaintiff states "that he filed his motion to compel seeking a forensic analysis relative to his second RFPs given that Defendants had already failed to provide discovery in response to the first set of requests for production and given that the discovery deadline was quickly approaching" [*Id.*]

With respect to costs, Plaintiff states that Defendants incurred substantial costs, more than what Plaintiff's vendor estimated, for a "substantially restrictive search criteria" [*Id*. at 11]. Plaintiff states that while Defendants request that he pay for the second forensic examination, his counsel told defense counsel to "hold off on the second forensic analysis in order to avoid a potential third one" [*Id*.]. Plaintiff states that the Court noted in its previous Order [Doc. 64] that it could not determine whether another forensic examination is necessary. Plaintiff states that he originally agreed to pay for the forensic examination given that "parties requesting such forensic examinations are typically obligated to pay for the cost[,]" but he "did not agree to pay for a forensic examination to be conducted at the sole direction of Defendants without any consultation with Plaintiff's counsel whatsoever regarding all aspects of the process from selection of the contractor to perform the forensic work to formulation of the appropriate search terms" [Doc. 67 p. 12 (emphasis omitted)].

8

Case 3:21-cv-00173-TAV-DCP   Document 77   Filed 01/31/23   Page 8 of 14   PageID #: 1286

Based on the above, Plaintiff requests that the Court order a new forensic analysis. Plaintiff proposes that the parties use an agreed upon vendor and that his search criteria be used. Plaintiff agrees to pay for the forensic analysis unless the results show that Defendants did not provide documents or deleted documents.

### III. ANALYSIS

As the Court has already explained, the forensic examination was supposed to be a collaborative process from the beginning. The Court did not order the parties to work together, but it was expected that they would do so given that Plaintiff agreed to pay for the forensic examination and Defendants have possession of the cellular phones. Although the Court understands the parties' concerns regarding the timing to complete the forensic examination, that in no way justifies their failure to communicate with one another immediately once the Court granted the request for a forensic examination. But now it is time to resolve these issues surrounding the examination so that this case can proceed accordingly. The parties present three primary disputes: (1) Defendants' selection of 4Discovery, (2) search criteria, and (3) costs.

#### A. Defendants' Selection of 4Discovery

Defendants have provided adequate reasons for choosing 4Discovery. Specifically, Defendants filed a List of Reference Materials Provided to Plaintiff's Counsel, which includes a Knoxville-based client and other laws firms that utilize 4Discovery with contact information [Doc. 68 p. 2]. Defendants have included the owner's CV, in addition to a list of news articles relating to 4Discovery's work [*Id*.]. Other than the fact that Plaintiff was not consulted about selecting 4Discovery and that he had selected LBMC, he has not offered any substantive objections to this vendor. Thus, the Court will not order another forensic examination on this basis.

B.     Search Criteria

Plaintiff articulates three issues with respect to Defendants' search criteria: (1) it failed to include communications to/from Gene Gammons,[7] (2) it was limited to text messages and did not include e-mail communications and corresponding e-mail addresses, and (3) the directive to search for electronic communications that reference "Scott Gammons" or some variation thereof is deficient to the extent communications regarding Plaintiff could have occurred without specifically naming Plaintiff. Plaintiff proposes thirteen additional search terms in relation to his First Set of RFPs, and he proposes twenty-five additional search terms in relation to his Second Set of RFPs.

With respect to Plaintiff's inclusion of his Second Set of RFPs, which adds twenty-five additional search terms, the Court **DENIES** this request. Plaintiff asserts that "he filed his motion to compel seeking a forensic analysis relative to his second set of requests for production given that Defendants had already failed to provide discovery in response to the first set of requests for production and given that the discovery deadline was quickly approaching" [Doc. 67 p. 10]. The Court acknowledges that Plaintiff referenced his Second Set of RFPs in his motion to compel, but there are two points fatal to Plaintiff's position. First, Plaintiff served the Second Set of RFPs on the same day he filed his motion, meaning Defendants had not responded to this discovery at the time Plaintiff filed his motion to compel. Second, the Court has not reviewed the Second Set of RFPs because Plaintiff did not file them. The Court will not order production of documents without reviewing the specific discovery requests. Thus, Plaintiff's attempt to make these discovery requests part of the forensic examination is not well taken.

---

[7]     It appears that Defendants' second forensic examination would have captured communications to/from Gene Gammons as Defendants searched for text messages "to or from anyone whatsoever[]" and then reviewed to determine if the number belonged to an Adroit employee [Doc. 66 p. 8].

10

Case 3:21-cv-00173-TAV-DCP   Document 77   Filed 01/31/23   Page 10 of 14   PageID #: 1288

With respect to e-mail communications, the Court **DENIES** Plaintiff's request. The Court's Memorandum and Order [Doc. 51] did not specifically address whether the forensic examination should be for text messages, e-mails, or both. While Plaintiff's First Set of RFPs requests e-mails and text messages, he only put forth a sufficient basis that texts messages had not been produced. For example, in citing deposition testimony in support of his request, Plaintiff stated, "Despite these responses to RFP[]s[,] Ms. Gammons testified in her deposition that she indeed had text message communications with Ms. Patten specifically regarding Plaintiff" [Doc. 37 p. 4]. In addition, Plaintiff noted, "Adroit manager Ed Tymitz testified in his deposition that he also received text messages from Ms. Patten in the period of March 7, 2020, through March 12, 2020" [*Id*. at 6]. Plaintiff did not put forth any information regarding Defendants' failure to produce e-mail communications. Thus, the Court will not extend the forensic examination to e-mail communications.

Plaintiff requests to add thirteen (13) search terms stating that Defendants' search for "Scott Gammons" and variations thereof is deficient because communications could have occurred without specifically naming Plaintiff. Defendants argue that these broadened search terms far exceed the actual discovery requests at issue. Defendants emphasize, "The Plaintiff moved to compel to find two text messages, and 4Discovery confirmed that they do not exist or cannot be recovered" [Doc. 66 p. 11].

The Court will allow Plaintiff to conduct another forensic examination because the undersigned agrees that communications could have occurred without specifically naming Plaintiff. In other words, the Court finds Defendants' forensic examination too narrow. Defendants argue that Plaintiff did not act in accordance with the parties' discovery plan, which states that if a party determines a word search is necessary, the party "must first provide written

11

notice of the word search request(s) to counsel for the party to whom the request will be directed and make a reasonable effort to meet and confer regarding the scope of such request to discuss possible limitations on the request and responsive information" [Doc. 21 p. 2]. But this dispute arose because Ms. Gammons and Patten admitted to exchanging text messages during their depositions—text messages that they had failed to produce. Further, a few days after the Court entered its Memorandum and Order [Doc. 51], Plaintiff's counsel sent an e-mail to defense counsel stating, "You and I need to discuss search parameters and provide those ASAP to meet the very tight time frame" [Doc. 66-1 p. 1].

Defendants also argue that Plaintiff filed his motion to compel to find two text messages [Doc. 66 p. 11]. But Defendants also read Plaintiff's motion to compel too narrowly. As explained above, Plaintiff filed his motion to compel the forensic examination because Ms. Gammons and Patten testified to receiving/sending text messages that were not produced in response to the First Set of RFPs. Any text messages that are responsive to the First Set of RFPS should have been produced. Thus, the Court will allow another forensic examination consistent with Plaintiff's proposed search parameters but not including e-mail communications [*See* Doc. 67 pp. 7–8].

Plaintiff has agreed to pay the costs for the forensic examination, and the Court orders him to do so. Plaintiff has also proposed that the parties agree upon a vendor. While the Court has doubts that the parties can agree to a vendor, the Court **ORDERS** the parties to meet and confer and select a vendor. The Court reminds the parties that the forensic examination will only be successful if they work collaboratively.[8]

---

[8] In Defendants' position statement, they represent, "Counsel for the responding party must serve as a gatekeeper between the search company and the requesting party for purposes of relevance and privilege" [Doc. 66 p. 6]. The Court notes that in Plaintiff's counsel's email dated November 18, 2022, he states to defense counsel, "I assume, however, you do not want my firm having possession of your clients' phone, which is perfectly understandable" [Doc. 67-1 p. 4]. These statements highlight the importance of working together given that Plaintiff is paying for

C.  **Costs**

Both parties want the other party to pay for the forensic examinations that have already occurred. In Plaintiff's motion to compel, he agreed to pay for the costs of the forensic examination, unless the results established that Defendants withheld discovery [Doc. 45 p. 3]. He did not agree to pay for the second forensic examination, stating, "To be clear, we will not agree to pay for the costs of a forensic analysis where we were effectively left out of the process again" [Doc. 66-3 p. 1]. The cost of the first examination was $5,426.55 [Doc. 66 p. 4 n.1]. The cost of the second forensic examination is unclear.

The Court declines to order Plaintiff to pay for the costs of the first and second forensic examinations. With respect to the first forensic examination, Plaintiff had no input on the search parameters or the selection of the vendor. Further, the Court finds it unfair for Plaintiff to pay for the second forensic examination as his counsel explicitly told Defendants that he did not agree to it and that he would not pay for it.

IV.  **CONCLUSION**

For the reasons set forth above, the Court will permit another forensic examination of Ms. Gammon's and Patten's cellular phones for text messages consistent with Plaintiff's search parameters but not including e-mail communications [*see* Doc. 67 pp. 7–8] with the timeframe of March 1, 2020, through March 19, 2020. The parties shall meet and confer to determine an appropriate vendor, and Plaintiff **SHALL** pay the costs of this forensic examination. The parties **SHALL** complete the forensic examination on or before **February 17, 2023**. To the extent that Plaintiff discovers any additional messages that affect the summary judgment motion, Plaintiff

---

the forensic examination, but Defendants have possession of their cellular phones and must review discovery before producing.

**SHALL** file a motion on or before **February 22, 2023**, requesting leave to file a supplemental brief pursuant to Local Rule 7.2. Plaintiff's motion shall explain how any uncovered messages affect the arguments raised in the dispositive motion.

    **IT IS SO ORDERED.**

                                      ENTER:

                                      Debra C. Poplin
                                      United States Magistrate Judge